IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

D.M., *et al.*,　　　　　　　　　　　　　　　　　　Case No. 3:18CV1307

    Plaintiffs

  v.　　　　　　　　　　　　　　　　　　　　**ORDER**

Board of Education
Toledo Public Schools, *et al.*,

    Defendants

  This lawsuit arises out of an incident at Robison Achievement Center (Robinson), a school in the Toledo Public School Disrict (TPS) for students with disabilities or special needs. The student, D.M., and his legal guardian, Laura Manees, sue the TPS Board and three of its employees assigned to Robinson: Principal David Manley, teacher Valerie Powell, and classroom aide Sonja Austin. The suit arises from a classroom incident involving physical restraint of D.M. by the three individual defendants. Plaintiffs allege that the defendants used unnecessary force in restraining D.M., causing physical injuries for which they seek damages.

  Plaintiffs assert discrimination claims against all the defendants under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.* Plaintiffs also claim that defendants violated D.M.'s constitutional rights under 42 U.S.C. § 1983 by: 1) unlawfully seizing D.M. in violation of the Fourth Amendment; 2) depriving him of his liberty without due process of law; and 3) denying him equal protection under the law in violation of the Fourteenth Amendment. Finally, plaintiffs bring state common law claims of assault, battery, and intentional infliction of emotional distress (IIED) against Manley, Austin, and Powell.

1

Pending is defendants' motion to dismiss (Doc. 6). Contending that plaintiffs' claims properly arise, if at all, under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400, *et seq.*, defendants seek dismissal for failure to exhaust administrative remedies, as required by 20 U.S.C. § 1415. Defendants move to dismiss plaintiffs' first amended complaint for failure to state a claim and for lack of subject matter jurisdiction over the state common law claims. (Doc. 6).

Jurisdiction over the federal claims is proper under 28 U.S.C. § 1331. Jurisdiction over the state law claims is proper, to the extent the federal claims are viable, under 26 U.S.C. § 1367.

For the reasons that follow, I grant the motion in part and deny it in part, with leave to plaintiffs to file an amended complaint.

**Background**

D.M. began attending Robinson in kindergarten, and, at all relevant times, he was on an Individual Education Plan (IEP). (Doc. 5, at 4, ¶ 13). During the Summer of 2016, D.M. attended a Robinson-run supplemental summer reading program. (Doc. 5 at 4, ¶ 15). On June 10, 2016, Manees received a phone call from a guidance counselor, who asked Manees to pick up D.M. from school because staff could not calm him.

When Manees, accompanied by an adult son, arrived at the school, Manees saw Manley, Powell, and Austin, restraining D.M. face down on the floor. (*See id.* at 7, ¶ 29). Manley held down D.M.'s neck with one hand, while twisting D.M.'s arm behind his back with the other. Meanwhile, Manley used his body weight to keep D.M's upper body on the floor. (*Id.* at 5, ¶ 18). Powell, with Austin's help, held D.M. by his legs. (*Id.* at 5, ¶ 19). Manley, Powell, and Austin released D.M. when Manees shrieked at this scene. (*Id.* at 5, ¶ 20).

D.M.'s injuries included scratches and bruising on his face and neck, abrasions on his knee and elbow, and a hematoma over his left eye. He received emergency room treatment for his injuries. (*See id.* at 5-6, ¶¶ 21-24).

Manees did not receive a report of any kind from Robinson about the incident. (*Id.* at 6, ¶ 25). D.M.'s IEP does not address whether Robinson personnel may use physical restraint on him. (*Id.* at 6, ¶ 27).

On or about September 16, 2016, Manees filed a complaint with the Ohio Department of Education, Office of Exceptional Children (OEC), about the incident. The OEC informed her that the matter was outside the scope of the office's responsibilities. (*Id.* at 8, ¶¶ 33-34). Thereafter, on or about November 18, 2016, Manees filed a complaint about the incident with the U.S. Department of Education, Office of Civil Rights. As of the date when Manees filed her pending amended complaint, that investigation remains pending. (*Id.* at 8, ¶ 35).

**Standard of Review**

Defendants' motion depends, to the extent it asserts a lack of subject matter jurisdiction, on whether plaintiffs have stated a claim for which relief can be granted. That is, the parties agree that, if I dismiss the current federal claims for failure to state a claim, I should decline to exercise supplemental jurisdiction over the state common law claims. (Doc. 6 at 10-11; Doc. 7 at 15). I therefore begin my analysis with defendants' arguments pursuant to Fed. R. 12(b)(6).

To survive a motion to dismiss under that Rule, the amended complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* At this stage, I must "draw all reasonable inferences in favor of [plaintiffs]." *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016).

## Discussion

### A. Plaintiffs Need Not Exhaust IDEA Administrative Remedies

The IDEA provides children with disabilities the right to a "free appropriate public education" (FAPE). *Fry v. Napoleon Comm. Schs.*, --- U.S. ---, ---, 137 S.Ct 743, 748, (2017). Plaintiffs seeking to enforce their rights under the IDEA may also have recourse under other laws, such as the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973 (Rehabilitation Act), and the U.S. Constitution. The IDEA does not "restrict or limit" plaintiffs' rights under those laws. 20 U.S.C. § 1415(l). The IDEA does require, however, that plaintiffs exhaust administrative remedies "before the filing of a civil action under such laws seeking relief that is also available under [the IDEA]." *Id.*

Defendants argue that, although on its face the complaint presents no IDEA claims, plaintiffs use artful pleading to avoid the exhaustion requirement. Accordingly, they submit that I must dismiss plaintiffs' federal claims for failing to meet that predicate requirement. (Doc. 6 at 7-9).

In response, plaintiffs argue that the exhaustion requirement does not apply because their claims do not seek relief under the IDEA (Doc. 7 at 4, 7-12). In any event, they contend that exhaustion would be futile and inadequate (*id.* at 12-13).

I agree that exhaustion would be futile under the circumstances.

## 1. The Gravamen of the Amended Complaint Seeks Relief for a FAPE

In *Fry, supra,* the Supreme Court recently stated the test for determining whether a complaint, though not facially raising IDEA claims, actually seeks relief under that statute, requiring exhaustion. Stating that the exhaustion requirement applies where "the substance, or gravamen, of the plaintiff's complaint" "seek[s] relief for the denial of a FAPE," -- U.S. at ---, 137 S.Ct. at 752, the Court described two "clues" to help courts address this inquiry; the first is to answer two hypothetical questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or a library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject. . . . But when the answer is no, then the complaint probably does not concern a FAPE.

*Id.* at --, 137 S.Ct. at 756.

The second clue involves reviewing "the history of the proceedings." *Id*., at ---, 137 S.Ct. at ---. "In particular, a court may consider that a plaintiff has previously invoked the IDEA's informal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching mainstream." *Id.* at ---, 137 S.Ct. at 757.

Defendants argue that the gravamen of plaintiffs' amended complaint concerns denial of a FAPE.

Looking to the first clue, defendants note that plaintiffs describe their factual allegations using IDEA terminology: plaintiffs refer to D.M. as a disabled student; they discuss his IEP; they note he participates in an education program for children with disabilities; and they point out that

Robinson considered "mainstreaming"[1] D.M. Defendants also note that plaintiffs' complaint (Doc. 5 at 7, ¶¶ 29-32) cites to O.A.C. § 3301-35-15, which "protects children in a school environment." To the same effect is a TPS Policy that, as referenced by the plaintiffs' complaint, prohibits prone restraint. (Doc. 5 at 7 ¶¶ 29-32 (citing TPS Board Policy Manual Section J, number JP)). That plaintiffs have used these provisions in their complaint further shows, defendants argue, that their claims are grounded in the school environment, and are not of either constitutional or state common law dimension.

Defendants also claim the second clue shows that plaintiffs' amended complaint seeks relief for denial of a FAPE. To that end, they note that plaintiffs first sought relief with the OEC, which investigates IDEA complaints, prior to filing suit. (*See* Doc.6 at 7-8).

Plaintiffs, on the other hand, argue that their amended complaint does not seek relief for denial of a FAPE. They focus on the first clue, arguing that they could bring the same claims they allege in their amended complaint if D.M. "had . . . been physically battered as a result of his disability by a librarian at the public library, or had an adult visitor with a disability experienced the same physical battery by a teacher at Robinson." (Doc. 7 at 7). They argue that using terms from the IDEA in their amended complaint has no bearing on the essential nature of their claims. Rather, they claim, the references to these terms put defendants on "notice . . . of the conditions that put [D.M.] at risk" and are not "central to the dispute of this litigation." (*See id.* at 11 (quoting *K.G. v. Sergeant Bluff-Luton Comm. Sch. Dist.*, 244 F. Supp. 3d 904 (N.D. Iowa 2017)).

---

[1] "Mainstreaming" is an IDEA term meant to indicate a student may transition out of a special education program into regular schooling.

As the parties point out, there is limited case law in the Sixth Circuit interpreting *Fry*. At least one district court in this circuit, however, has found that a complaint seeks relief for denial of a FAPE where the plaintiff alleges that school employees improperly restrained a pupil. *See N.S. ex re. J.S. v. Tennessee Dep't of Educ.*, 2017 WL 1347753, *11 (M.D. Tenn.).

The court in *N.S.*, *supra*, 2017 WL 1347753 at *11, explained that "[t]he discipline of students is primarily educational in nature and . . . restraints are considerations for the classroom environment, where students need to have their behavior managed in order to learn effectively." Accordingly, the court found, the first clue indicated plaintiffs sought relief for denial of a FAPE: "[R]estraint techniques are not implemented on adult employees or visitors of . . . schools, nor are they implemented on minors such as the plaintiffs in other public institutions." *Id.* (declining to reconsider prior decision to dismiss claims for failure to exhaust IDEA administrative remedies); *see also P.G. ex rel. R.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp. 3d 891, 899 (M.D. Tenn. 2018) ("Multiple courts have found that a complaint regarding restraint conduct seeks the denial of a FAPE and requires exhaustion.") (citing *N.S.*, *supra*, 2017 WL 1347753 at *11 and collecting cases).

D.M.'s version in the amended complaint of the events is that the individual defendants used the restraint to discipline him. After the incident, he explained to Manees that Manley, Austin, and Powell restrained him because he kicked over a chair when told to line up for lunch. (Doc. 5 at 5, ¶ 20). Justifiable or not, the individual defendants applied the face-down restraint to control D.M.'s classroom behavior. *See P.G.*, *supra*, 313 F. Supp. 3d at 900 (explaining that "restraints are particular to the school environment and applied by school officials in the handling of special needs students").

7

Finally, I note that, as here, the plaintiffs in *P.G., supra,* 313 F. Supp.2d at 900, cited a regulation protecting students, which that court viewed, as I do, as further support for the conclusion that a complaint sounds under the IDEA.

In light of the persuasive reasoning of these decisions, few though they may be, I agree that D.M. would not have similar claims had forcing him face down onto the ground taken place in another public facility. Likewise, adults at Robinson, not subject to classroom discipline, would not have have similar claims had the individual defendants treated them in the same way.

Accordingly, I find that the gravamen of plaintiffs' amended complaint seeks relief for denial of a FAPE.[2]

## 2. Exhaustion Would be Futile

Plaintiffs argue that they are exempt from the exhaustion requirement because exhaustion would be futile or inadequate to address their harms.

"There are narrow exceptions to the exhaustion requirement: when use of administrative procedures would be futile or inadequate to protect the plaintiff's rights and when the plaintiff was not given full notice of his procedural rights under the IDEA." *F.C. v. Tennessee Dep't of Educ.*, --- Fed. App'x ----, 2018 WL3995656, *3 (6th Cir. 2018) (citing *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000); *Honing v. Doe*, 484 U.S. 305, 326 (1988)). "The burden of demonstrating one of these exceptions is with the party seeking to bypass the administrative process." *Id.* (citing *Covington, supra*, 205 F.3d at 917).

---

[2] I disagree with defendants, however, that the OEC complaint indicates that plaintiffs seek relief for denial of a FAPE. The Supreme Court explained that "[a] plaintiff's initial choice to pursue [the administrative] process may suggest that she is indeed seeking relief for the denial of a FAPE—with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy." *Fry, supra* 137 S.Ct. at 757. Plaintiffs made no "strategic calculations." Rather, the OEC declined to review Manee's complaint.

Plaintiffs argue that administrative remedies would be futile to address their harms. If they filed an administrative complaint, plaintiffs explain, "the hearing officer would not have been able to award money damages to compensate D.M. for his physical and emotional injuries." (Doc. 7 at 12). They further argue that other relief, such as "order[ing] the school to amend the IEP, order[ing] that the IEP be followed, . . . order[ing] a specific accommodation . . . , or ordering that Defendants refrain from subjecting D.M. to further prone restraint. . . would be futile – the damage has already been done." (*Id.*).

Defendants argue that plaintiffs have not met their burden of demonstrate futility. Citing *Rohrbaugh ex rel. Rohrbaugh v. Lincoln Intermediate Unit*, 255 F. Supp. 3d 589, 597 (M.D. Pa. 2017), they claim that the circumstances do not warrant applying the futility exception. (Doc. 8 at 6).

In *Rohrbaugh*, the court declined to apply the futility exception, explaining the exception applies where "the Plaintiffs previously utiliz[ed] the IDEA administrative process [and] developed . . . [a full] factual record and resolved evidentiary issues, where the only issue left for determination is damages, and where the IDEA cannot provide a suitable remedy for the harms alleged." *Id.* (citing *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 281 (3d Cir. 2014)).

Apparently believing none of the *Rohrbaugh* circumstances exists in this case, the defendants conclude that "plaintiffs have not demonstrated that the exception is warranted." (Doc. 8 at 6).

Though courts have noted that "a mere claim for money damages is not sufficient to render exhaustion of administrative remedies unnecessary", *Covington*, *supra*, 205 F.3d at 917 "where there is no administrative remedy for a wrong that the plaintiff has suffered, exhaustion is

9

futile and may be waived." *Id.* (internal quotations and citations omitted). "It is when a plaintiff has a legitimate claim for 'general damages' not available under the IDEA," he or she may "bypass the [IDEA] administrative process." *Gean v. Hattaway*, 330 F.3d 758, 774 (6th Cir. 2003) (citing *Covington*, *supra*, 205 F.3d at 917)).

Plaintiffs essentially claim that, because they seek money damages for a concluded, one-time event, the IDEA provides them no relief, rendering exhaustion futile. (*See* Doc. 7 at 12). Here, unlike the situation in *Covington, supra,* 205 F.3d at 917, where the court found futility because the student-plaintiff had graduated, D.M.'s harms are not "wholly in the past." D.M. remains a student at Robinson and is far from graduation age. (Doc. 5 at 3, ¶ 6). *See Holden v. Jensen*, 2011 WL 40366655, *9 (W.D. Mich.) (holding plaintiffs did not establish futility considering, among other things, that the child was "far from his graduation date"). Accordingly, I do not find that plaintiffs have established the futility exception on the ground that they seek compensatory damages for past harms.

Both parties, however, ignore a crucial fact that I believe demonstrates futility. Plaintiffs in their amended complaint allege that they sought relief with the OEC, the state agency charged with determining IDEA compliance. Yet, according to the amended complaint, the OEC stated that plaintiffs' complaint was "outside the scope of their office." (Doc. 5, ¶ 34). This seems pretty definitive: just how can plaintiffs expect, or be required to, exhaust their administrative remedies when that office has already turned them away?

Because the OEC declined to investigate plaintiffs' complaint, I find that a second attempt to pursue redress with that office would be futile. *See Rohrbaugh*, *supra*, 255 F. Supp. 3d at 281 (explaining futility may exist where "the Plaintiffs previously utiliz[ed] the IDEA administrative process").

Accordingly, I will not dismiss plaintiffs' FAC for failure to exhaust their administrative remedies under IDEA.

### B. Plaintiffs State Constitutional Claims Against Manley, Austin, and Powell in Their Individual Capacities

Defendants argue that I must dismiss plaintiffs' constitutional claims for failure to state a claim. Plaintiffs agree with defendants that the first amended complaint does not sufficiently allege that the Board is liable for any committed constitutional violations. I therefore grant defendants' motion as to their constitutional claims against the Board.

This leaves the constitutional claims against the individual defendants: Manley, Austin, and Powell. Defendants argue that I should dismiss these claims as dependent on the claim against the Board. That is true only to the extent that plaintiffs have sued Manley, Austin, and Powell in their official capacities. Because the parties agree that I must dismiss the constitutional claim against the Board, I must dismiss any official capacity claims against the individual defendants. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Doe v. Claiborne Cty., Tenn. ex rel. Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996).

To the extent, however, that plaintiffs have sued the individual defendants in their individual capacities (*see* Doc. 7 at 14-15), I decline to dismiss those claims.

"[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Graham*, *supra*, 473 U.S. at 166 (citing *Monroe v. Pape*, 365 U.S. 167 (1961)). Defendants do not identify any

pleading deficiencies in plaintiffs' amended complaint respecting this aspect of their claims. Nor do they argue on reply that I should dismiss the *individual capacity* claims. (*See* Doc. 8 at 7).[3]

I therefore grant the motion to dismiss the constitutional claims against the Board and deny the motion as to the constitutional claims against Manley, Powell, and Austin.

### C. Supplemental Jurisdiction Remains Proper

Defendants argue – and plaintiffs agree – that if I dismiss the federal claims against the individual defendants, I should dismiss the state common law claims against them. (Doc. 6 at 10-11 (citing 28 U.S.C. § 1367(c)(3); *Combs v. Mgmt. & Training Corp.*, 2018 WL 3913111, *1 (N.D. Ohio)). Because I have not dismissed the federal claims, I will not "decline to exercise supplemental jurisdiction" over the common law claims. 28 U.S.C. § 1367(c)(3).

### D. The Punitive Damages Claim Is Dismissed With Leave to File an Amended Complaint

Defendants argue that I must dismiss the punitive damages claim in Count IX because it asserts "a stand-alone cause of action for punitive damages." (Doc. 6 at 11 (citing *Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E. 2d 331, 342 (Ohio1994)).

"In Ohio, no civil action may be maintained simply for punitive damages." *Moskovitz*, *supra*, 635 N.E.2d at 342 (citing *Bishop v. Grdina*, 485 N.E.2d 704, 705 (Ohio 1985) (superseded by rule on other grounds, *see Niskanen v. Giant Eagle, Inc.*, 912 N.E.2d 595, 599 (2009))). "Rather, punitive damages are awarded as a mere incident of the cause of action in which they are sought." *Id.* (citing *Bishop*, *supra*, 485 N.E.2d at 705).

---

[3] As do the parties, I leave open for another day the question of whether the individual defendants may be entitled to qualified immunity as to the plaintiffs' § 1983-based claims against them. *See generally Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

Because Ohio does not recognize stand-alone claims for punitive damages, I grant defendants' motion to dismiss Count IX without prejudice to their right to seek to recover such damages at trial.[4]

**Conclusion**

It is, therefore,

ORDERED THAT defendants' motion to dismiss (Doc. 6) be, and the same hereby is granted as to Counts I – III and Count IX of plaintiffs' first amended complaint and denied as to Counts IV – VIII of plaintiffs' first amended complaint.

The Clerk shall forthwith issue an order scheduling a telephonic status/scheduling conference and requiring the parties to submit status reports not later than one week prior to that conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

[4] If defendants so desire, they shall notify plaintiffs' counsel within two weeks of the date of this order that they desire that plaintiffs add a demand for punitive damages to the *ad damnum* in their complaint. In which case I herewith grant leave to plaintiff to file within two weeks of receipt of such notice an amended complaint doing so. I also advise the parties that, in the event of trial, neither party is to mention a demand for punitive damages until I conclude that I should include a charge in the jury instruction on that issue.